Present:  All the Justices

ALEX YUZEFOVSKY

                                        OPINION BY
v.  Record No. 993015        JUSTICE LAWRENCE L. KOONTZ, JR.
                                     January 12, 2001
ST. JOHN'S WOOD APARTMENTS, ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Melvin R. Hughes, Jr., Judge

    In this appeal, we consider whether the trial court
properly sustained a demurrer to a second amended motion for
judgment filed by a tenant against his landlord alleging fraud,
negligent failure to warn, and negligent failure to protect
concerning the danger of a criminal assault on the tenant by a
third party which occurred on the landlord's property.

    Because the procedural posture of this case controls our
consideration of the factual allegations of the pleading at
issue, we initially relate the proceedings in the trial court
that preceded the trial court's sustaining the demurrer to that
pleading.  On April 26, 1998, Alex Yuzefovsky, a tenant of St.
John's Wood Apartments, filed a motion for judgment against St.
John's Wood Apartments and the alleged owner of that
development, SJW, Limited Partnership.  Under various theories,
Yuzefovsky alleged that these defendants were liable for
injuries he sustained on the property of St. John's Wood
Apartments as a result of a criminal assault by a third party.
Prior to serving the original motion for judgment on these

defendants, Yuzefovsky filed an amended motion for judgment adding as additional defendants General Services Corporation and GSC Security. This pleading alleged that the former had an ownership interest in St. John's Wood Apartments and the latter provided security services to the other defendants on the premises of these apartments. This pleading included additional theories of liability and increased ad damnum claims.

After the first amended motion for judgment was served on the defendants, they filed a joint plea in bar of the statute of limitations with respect to a number of the claims asserted by Yuzefovsky and a demurrer to all of them. Thereafter, the trial court sustained the plea in bar to one claim, sustained the demurrer to the remaining claims except for a claim of breach of contract, and granted Yuzefovsky leave to file a second amended motion for judgment. On July 7, 1999, Yuzefovsky filed his second amended motion for judgment reasserting each of the claims to which the trial court had previously sustained the defendants' demurrer without material change in the factual allegations. This pleading, however, did not reassert the claim to which the plea in bar had been sustained or the contract claim to which the demurrer had been overruled. The defendants filed another demurrer to all the claims in the second amended motion for judgment, the trial court sustained this demurrer, and dismissed the case with prejudice.

2

Our consideration of the factual allegations in this case is governed by the well-settled principle that when a circuit court sustains a demurrer to an amended motion for judgment which does not incorporate or refer to any of the allegations that were set forth in a prior motion for judgment, we will consider only the allegations contained in the amended pleading to which the demurrer was sustained. Bell Atlantic-Virginia, Inc. v. Arlington County, 254 Va. 60, 63 n.2, 486 S.E.2d 297, 299 n.2 (1997); see also Breeding v. Hensley, 258 Va. 207, 212, 519 S.E.2d 369, 371 (1999). Our consideration of those allegations is further guided by well-settled principles of appellate review. A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. Cox Cable Hampton Roads, Inc. v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not, however, admit the correctness of the pleader's conclusions of law. Ward's Equip., Inc. v. New Holland North America, Inc., 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Accordingly, we will consider the facts stated, and those reasonably and fairly implied and inferred, in the second amended motion for judgment in a light favorable to Yuzefovsky, but we will review the sufficiency of the legal conclusions ascribed to those facts de novo. In relating these facts we

3

will hereafter refer in context to all the defendants collectively as "St. John's Wood" and the apartment complex as "the development."

In December 1994, Yuzefovsky moved to Richmond to begin new employment. His employer initially provided him with temporary housing while he looked for permanent housing. In conducting his housing search, Yuzefovsky was particularly concerned with the issue of his personal security, desiring to find housing in a safe and crime-free environment.

In discussing his interest in leasing an apartment in the development with employees of St. John's Wood, Yuzefovsky indicated that he was unfamiliar with the area where the development was located and expressed his concern for security. He specifically asked the employees if the development "was safe and whether there had been crime on and/or about the property." The employees told Yuzefovsky "that there had been no crimes at [the property of] St. John's Wood, and that it was safe." They further advised Yuzefovsky that "police officers lived in the development and that police vehicles patrolled the property."

Based upon these assurances, Yuzefovsky became a tenant of St. John's Wood, leasing an apartment in the development and taking possession of it in February 1995. On November 21, 1996, Yuzefovsky was confronted by an assailant armed with a sawed-off shotgun in a walkway on the property of St. John's Wood and

4

immediately adjacent to his apartment.  The assailant shot Yuzefovsky in the right shoulder, took his car keys, and fled in Yuzefovsky's vehicle.  The assailant was subsequently arrested and convicted of crimes related to this incident.

Yuzefovsky alleges that the employees of St. John's Wood knew that their representations that there had been no crimes committed on or in the vicinity of the development, that the development was safe, that police officers lived there, and that police vehicles patrolled the development were false.  He further alleges that in 1994, 656 crimes, including 113 crimes against persons, were reported to the Richmond City Police as having occurred in the vicinity of the development and that criminal activity in that vicinity remained at that level for the next two calendar years.  Yuzefovsky further alleges that during the three-year period from November 21, 1993 to November 21, 1996, there were 257 crimes reported to Richmond City Police that occurred on the development.[1]  These crimes included "5 robberies . . ., 8 aggravated assaults, 13 simple assaults, 37 residential burglaries, 34 larcenies, 97 larcenies from the

---

[1]Yuzefovsky does not allege with specificity how many of the crimes on the property of St. John's Wood occurred prior to his decision to lease an apartment from St. John's Wood.  It is a reasonable inference that at least some of these crimes occurred prior to December 1994.  Yuzefovsky also does not allege with specificity how many of these crimes occurred, if any, immediately prior to the November 21, 1996 assault upon him.

auto[mobile], 2 abductions, 30 property crimes and 26 motor vehicles thefts."

The legal theories of liability asserted by Yuzefovsky in his second amended motion for judgment and for each of which he sought $15,000,000 for compensatory damages, in summary, are:

**(1) Fraud.** Yuzefovsky alleges that the misrepresentations by employees of St. John's Wood that the development was safe and crime-free and that police lived in and patrolled the development "were negligent, reckless and/or intentional," and that he relied on these misrepresentations in leasing an apartment at the development. Yuzefovsky alleges that the injuries he sustained in the subsequent criminal assault were a direct and proximate result of these misrepresentations.

**(2) Duty to Warn.** Yuzefovsky alleges that under the circumstances of the previous criminal conduct that was known by St. John's Wood, they owed a duty to warn him that "violent crime had taken place at [the development]," and that the negligent failure to exercise that duty was a proximate cause of the injuries he sustained in the subsequent criminal assault.

**(3) Duty to Protect.** Yuzefovsky alleges that St. John's Wood, "and in particular GSC Security," owed a duty to protect him against unsafe conditions or criminal activities of which they knew or should have known. He alleges that St. John's Wood had undertaken the duty to protect their tenants through the use

6

of a security service, and that having done so, St. John's Wood and this security service[2] were negligent in exercising that duty by deploying inadequate numbers of security guards, using "[i]mproper patrol techniques," providing "[i]nadequate security equipment," and in failing to properly train, select, and compensate their security guards. Yuzefovsky alleges that the breach of this duty was a proximate cause of the injuries he sustained in the subsequent criminal assault.

**(4) Special Relationship**. Yuzefovsky alleges that "[a]s a tenant of [St. John's Wood, they] had a special relationship with [Yuzefovsky]. That [this] special relationship created a duty to exercise reasonable care to protect [Yuzefovsky] against criminal acts of third persons and to warn him of the danger of such attacks, since the danger of such attacks [was] known and/or reasonably foreseeable to [St. John's Wood]." Yuzefovsky alleges that the breach of the duties created by this special relationship was a proximate cause of the injuries he sustained in the subsequent criminal assault.

In a memorandum in support of the defendants' demurrer to the second amended motion for judgment, they contended that the

---

[2]The relationship between General Services Corporation and GSC Security is not clear from the record. For purposes of this appeal, we draw the reasonable inference that General Services Corporation is a management company and GSC Security is either a unit of that company or a wholly owned subsidiary of it.

allegations of fraud were based upon vague and indefinite statements of opinion and not fact, and that Yuzefovsky was not justified in relying on these statements. They further contended that Yuzefovsky had a duty to undertake his own investigation of the area rather than relying on the statements made by employees of St. John's Wood.

As to the remaining claims of the second amended motion for judgment, the defendants contended that the liability asserted by each claim was founded upon the duty of St. John's Wood to warn and/or protect tenants against criminal assaults by unknown third parties. The defendants contended that there is no liability on a landlord in such circumstances because, as a matter of law, there is no special relationship between landlord and tenant that would give rise to such duties. They further contended that even if there were a special relationship in this case, there was no duty to warn or to protect because the criminal act of the third party was not reasonably foreseeable.

The trial court sustained the defendants' demurrer to the fraud claim ruling that "[a]ny statement by [employees of St. John's Wood] that the area would be safe from crime is opinion, not fact and not actionable." The trial court further ruled that even if such statements were actionable as fraud, the

allegations of fact failed to establish a causal nexus between those statements and the criminal act that caused Yuzefovsky's injuries.

As to the various theories of negligence, the trial court ruled that Virginia does not recognize a special relationship between landlord and tenant giving rise to a duty to warn or to protect. Thus, the trial court, relying primarily upon Wright v. Webb, 234 Va. 527, 533, 362 S.E.2d 919, 922 (1987), further ruled that a landlord is not liable for crimes committed by a third party against the tenant on the landlord's property in the absence of knowledge that criminal assaults are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to the tenant. This appeal followed.

## DISCUSSION

Yuzefovsky assigns three errors to the trial court's judgment sustaining the demurrer. In his first assignment of error, Yuzefovsky asserts that the trial court erred in ruling, as a matter of law, that a landlord's knowledge of prior criminal assaults on or near the landlord's property cannot give rise to a duty to take reasonable measures to warn and/or protect a tenant from reasonably foreseeable similar assaults. He asserts in his second assignment of error that the trial court erred in finding that the alleged false statements of St. John's Wood were mere opinions and, therefore, not actionable.

9

He asserts in his third assignment of error that the trial court erred in ruling, as a matter of law, that the misrepresentations by St. John's Wood were not "a proximate cause" of Yuzefovsky's injuries. We will address each of these assignments of error seriatim.

### Negligence Issues

As we noted above, in ruling upon a demurrer the issue before the trial court in this case, and before this Court on appeal, is whether the facts alleged in Yuzefovsky's second amended motion for judgment, along with the facts that may be reasonably and fairly implied by or inferred therefrom, are sufficient to support the causes of action under the theories of liability to which those facts relate. With respect to claims of negligence, the factual allegations must establish the existence of a duty of care. Whether such duty exists is "a pure question of law." Burns v. Johnson, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). If the allegations are legally sufficient to establish a duty as a matter of law, then it becomes a matter for the jury, upon the evidence, to "determine[] whether the duty has been performed." Acme Markets, Inc. v. Remschel, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943).

The parties do not dispute the law applicable to the various legal assertions contained in Yuzefovsky's second

10

amended motion for judgment.  Rather, they dispute whether the factual allegations made therein sufficiently state the necessary elements of a cause of action against an owner or occupier of land, for injuries caused by the criminal act of a third party.  The question of when and under what circumstances an owner or occupier of land will be required either to warn his invitees or tenants of, or protect them against, harm from the criminal act of a third party is always fact specific and, thus, not amenable to a bright-line rule for resolution.  In that regard, while the general rule that no such duty is owed is unquestionably the law of this Commonwealth, Gupton v. Quicke, 247 Va. 362, 363, 442 S.E.2d 658, 658 (1994), we have recognized that there are narrow exceptions to this rule.

It is worthy of note, however, that while recognizing these exceptions, we have rarely found the circumstances of the cases under review to warrant the application of these exceptions. Compare, e.g., Burns, 250 Va. at 44-45, 458 S.E.2d at 450 (business owner not liable for criminal assault on invitee), Wright, 234 Va. at 533, 362 S.E.2d at 922 (business owner not liable for criminal assault on invitee), and Gulf Reston, Inc. v. Rogers, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974)(landlord not liable for criminal assault on tenant) with Dudley v. Offender Aid and Restoration of Richmond, Inc., 241 Va. 270, 279, 401 S.E.2d 878, 883 (1991)(private operator of "half-way

house" for felons had special relationship with its clients and owed duty of care to the public to control clients' actions). We have, however, set out in these and other cases the general analysis applicable for determining whether an exception to the general rule applies.

First, the plaintiff must establish that there is a special relationship, either between the plaintiff and the defendant or between the third party criminal actor and the defendant.[3]  <u>See</u>, <u>e.g.</u>, <u>Holles v. Sunrise Terrance, Inc.</u>, 257 Va. 131, 136, 509 S.E.2d 494, 497 (1999).  The necessary special relationship may be one that has been recognized as a matter of law, such as that between an innkeeper and guest, or it may arise from the factual circumstances of a particular case.  Second, the plaintiff must establish that the special relationship creates a duty of care, such as to warn and/or protect the plaintiff, as a result of the particular circumstances of that special relationship, including the known or reasonably foreseeable danger of harm to the plaintiff from the criminal act of the third party.  Whether the circumstances will warrant the imposition of those duties, as we

---

[3]Yuzefovsky does not contend that there was a special relationship between St. John's Wood and the third party criminal actor in this case.  We note that the existence of such a relationship is almost always limited to a defendant's exercise of a legal duty to control the actions of a person in custody or on parole.  <u>See</u>, <u>e.g.</u>, <u>Dudley</u>, 241 Va. at 275-76, 401 S.E.2d at 881.

have stated, is a fact-specific determination. Because the imposition of those duties "does not depend upon foreseeability [of harm to the plaintiff] alone," consideration must be given to "the magnitude of the burden of guarding against [harm to the plaintiff] and the consequences of placing that burden on the defendant." Gulf Reston, 215 Va. at 159, 207 S.E.2d at 845 (citation omitted); see also Wright, 234 Va. at 531, 362 S.E.2d at 921. Guided by these principles, we begin our analysis to determine whether there was a special relationship between St. John's Wood and Yuzefovsky and, if so, whether any duty of care was owed by St. John's Wood to Yuzefovsky under the factual allegations in the second amended motion for judgment.

Initially, we observe that, with regard to Yuzefovsky's negligence claims, the separate counts in the second amended motion for judgment incorporate by reference "all other allegations" in that pleading. One such allegation is that Yuzefovsky "was a business invitee and tenant" of St. John's Wood. In a separate count entitled "Special Relationship," Yuzefovsky further alleges that because he was their tenant that a special relationship existed between himself and St. John's Wood. On appeal, Yuzefovsky does not rely on the status of business invitee to advance his assertions that the trial court erred in sustaining the demurrer to his pleading. Rather, his assertions are made in the context of the relationship between

13

landlord and tenant and, accordingly, we will review the allegations in the second amended motion for judgment, including the count entitled "Special Relationship," in that context.

In prior cases, we have recognized that the necessary special relationships that may create a duty of care include those of common carrier and passenger, business proprietor and invitee, innkeeper and guest, and employer and employee.  A.H. v. Rockingham Publishing Co., 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998); see also Klingbeil Management Group Co. v. Vito, 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987).  Although we have observed that this list is not exclusive, we have consistently rejected the contention that the relationship of landlord and tenant, without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party.  Gulf Reston, 215 Va. at 159, 207 S.E.2d at 845; Klingbeil, 233 Va. at 448, 357 S.E.2d at 201 (holding that "there was no such common-law duty on this landlord" (emphasis added)).

Rather, we have stressed that while a landlord owes a duty to his tenant to maintain in a reasonably safe condition those areas over which he has control, the landlord is not an insurer of his tenant's safety.  Gulf Reston, 215 Va. at 157, 207 S.E.2d at 844.  Thus, as a general rule, we have interpreted the landlord's duty as being limited to maintaining in good repair

14

and free of latent defects the areas over which the landlord has control, and not to require the landlord "to act as a policeman . . . 'to protect his tenant from a criminal act by a third person.' " Klingbeil, 233 Va. at 447, 357 S.E.2d at 201 (citation omitted). Nonetheless, in Gulf Reston and Klingbeil we made clear that our holdings were based upon the specific facts of those individual cases. We did not preclude a determination under different circumstances that the necessary special relationship between a landlord and his tenant could be established such as to create a duty of care upon the landlord with regard to the criminal conduct of a third party that is an exception to the general rule applicable to the landlord-tenant relationship. Gulf Reston, 215 Va. at 159, 207 S.E.2d at 845; see also A.H., 255 Va. at 221 n.4, 495 S.E.2d at 486 n.4.

Assuming, without deciding, that the facts and circumstances as alleged in the second amended motion for judgment establish a special relationship between St. John's Wood and Yuzefovsky, we must also consider whether those facts and circumstances are also sufficient to establish that St. John's Wood had a duty of care to warn and/or protect Yuzefovsky against the danger of harm from the criminal conduct of a third party. We are of opinion that neither duty is established on the facts and circumstances alleged in this case.

15

Although in our prior landlord-tenant cases we found no special relationship and, thus, we did not reach the issue of what circumstances would give rise to a duty of care on the part of the landlord, in Wright, we observed that "[a] business invitor owes the same duty of reasonable care to his invitee that a landlord owes to his tenant." 234 Va. at 530, 362 S.E.2d at 921. With respect to whether a particular special relationship creates a duty to protect the invitee from the criminal acts of a third party, we went on to say that "[i]n ordinary circumstances, it would be difficult to anticipate when, where, and how a criminal might attack a business invitee." Id. at 531, 362 S.E.2d at 921. Accordingly, we held that a business owner "does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee." Id. at 533, 362 S.E.2d at 922. We hold that this same standard applies to the determination whether a landlord owes a duty of care to protect a tenant with whom a landlord has a special relationship.

There are no express allegations in Yuzefovsky's second amended motion for judgment that St. John's Wood knew that criminal assaults against persons were occurring, or were about to occur, on the premises that would indicate an imminent

16

probability of harm to Yuzefovsky or another tenant, nor can such knowledge be reasonably implied or inferred from the allegations made.  Moreover, Yuzefovsky's allegations, if proven, do not establish an imminent probability of injury to him from a criminal assault by a third party on the premises. There is no allegation that would support the conclusion that on or near the date when Yuzefovsky was injured such assaults or other crimes against persons were occurring, or about to occur, on the premises of St. John's Wood.  Thus, we need not consider whether foreseeable harm at the heightened degree of probability established in Wright existed at some other time during this landlord-tenant relationship.  Cf. Thompson v. Skate America, 261 Va. ___, ___, ___ S.E.2d ___, ___ (2001)(decided today, holding that imminent probability of harm is a heightened degree of foreseeable harm).  Accordingly, we hold that the allegations of the second amended motion for judgment are insufficient to establish that St. John's Wood had a duty to protect Yuzefovsky under the facts of this case.

Similarly, although we have not previously addressed the question whether a business owner, including a landlord, in a special relationship has a duty to warn an invitee or tenant of the danger of harm from criminal activity by a third party on the business owner's premises, we find no reason in this case to invoke a standard different from that used to determine whether

17

there is a duty to protect.  Cf. Dudas v. Glenwood Golf Club, 261 Va. ___, ___, ___ S.E.2d ___, ___ (2001)(decided today, applying the same standard for both duties in a business owner-invitee relationship).  Because Yuzefovsky had resided at the property of St. John's Wood for approximately one year and nine months before he was injured, we hold that there is no basis to impose a continuing duty to warn against a danger that was not imminent.

For these reasons, we hold that Yuzefovsky's second amended motion for judgment does not establish a jury issue whether he was in imminent danger of harm from a criminal assault by a third party of which the defendants were aware and, thus, the trial court did not err in sustaining the demurrer to Yuzefovsky's negligence claims.

### Fraud Issues

Yuzefovsky's second assignment of error asserts that the trial court erred in finding that the false statements he alleged were made to him by employees of St. John's Wood concerning the safety of the development were mere opinions and, thus, could not form the basis of a claim for fraud.  St. John's Wood contend that the employees' statements concerning safety are clearly matters of opinion and that the claim that the development was crime-free "is so exaggerated that no reasonable person would be justified in relying upon it."  Expanding on

18

this latter contention during oral argument, counsel for St. John's Wood asserted that these statements were "puffing," that is "[t]he expression of an exaggerated opinion-as opposed to a factual representation-with the intent to sell a good or service." Black's Law Dictionary 1247 (7th ed. 1999). We disagree with St. John's Wood.

"It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud." Saxby v. Southern Land Co., 109 Va. 196, 198, 63 S.E. 423, 424 (1909). "We have not, however, established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact. Rather, 'each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances.' " Mortarino v. Consulting Engineering Services, Inc., 251 Va. 289, 293, 467 S.E.2d 778, 781 (1996)(quoting Packard Norfolk, Inc. v. Miller, 198 Va. 557, 562, 95 S.E.2d 207, 211 (1956)).

Here, the statements alleged to have been made by the employees of St. John's Wood were not volunteered as part of a

"sales pitch" to every potential tenant, but were specifically made in response to the Yuzefovsky's expressed concern for his personal security.  Moreover, the specific statements that the development was crime-free, that police officers lived there, and that police vehicles patrolled the development are not matters of opinion or puffing, especially when, as is alleged, the employees knew these statements to be objectively false. Accordingly, we hold that the trial court erred in finding that these false statements were not fraudulent misrepresentations of fact.

Yuzefovsky's third assignment of error raises the issue whether the trial court erred in finding that, even if these statements were fraudulent, there was no causal nexus between the fraud and the subsequent injuries resulting from the assault by a third party unknown to St. John's Wood.  St. John's Wood contend that at best the allegations constitute a claim for fraudulent inducement to enter into a contract and that the damages resulting from the criminal assault more than a year and half after the alleged act of fraud are too remote to give rise to liability.  We agree with St. John's Wood.

To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage.  <u>Evaluation Research</u>

Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

Moreover, the "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Soble v. Herman, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940); see also Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc., 258 Va. 377, 382, 520 S.E.2d 362, 365 (1999); Patrick v. Summers, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988).

In determining whether a cause of action for fraud sounds in contract or tort, and the damages that will arise therefrom, the source of the duty to abstain from making the fraudulent representation must be ascertained. Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). "[A] party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. However, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.' " Id. (citation omitted).

It is clear that the duty to refrain from making these statements relates to the contract Yuzefovsky was induced to sign, and not from a common law duty. In addition, the assault by the third party was remote in time from the execution of the contract and, thus, the damages for which Yuzefovsky sought

21

recovery under the theory of fraud did not directly result from the fraudulent inducement to enter into that contract. Accordingly, we hold that the trial court did not err in sustaining the demurrer to the claim for fraud.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court sustaining the demurrer to Yuzefovsky's second amended motion for judgment.

_Affirmed_.