# CIRCUIT COURT OF THE CITY OF RICHMOND

Advanté Designs, Inc.,
d/b/a Advanté Advertising,
and Repro 1, Inc.

v.

Christopher David McGinnis,
Individually,
a/k/a C. Dave McGinn and
Christopher D. McGinnis,
Nadine McGinnis, Individually,
Christopher David McGinnis,
d/b/a McGinnis Technologies,
Christopher David McGinnis,
d/b/a Digital Ink,
and Digital Ink, Inc.

Case No. LP-462-1

BY JUDGE MELVIN R. HUGHES

February 6, 2003

In this case employers, Advanté Designs Inc. (Advanté) and Repro 1, Inc. (Repro 1)[1] have brought claims in equity against a former employee, Christopher McGinnis (McGinnis), for breach of fiduciary relationship, tortious interference with contractual relations, conspiracy under Va. Code § 18.2-500, and fraud. The employers seek restitution, compensatory damages, and punitive damages and ask the court to impose a constructive trust. Following a trial to the court, the parties have submitted proposed findings of facts and conclusions of law.[2]

## Findings of Fact

In summary, the evidence established that defendant David McGinnis (McGinnis) became employed with plaintiff Advanté Designs, Inc., d/b/a Advanté Advertising (Advanté), in February 1987, to manage a new division that would engage in pre-press and printing work for Advanté. That year, the parties executed a written employment agreement, which contained a covenant not to compete.

In January 1993, the pre-press and printing division was separately incorporated and named Repro 1. Advanté owned and controlled Repro 1. Repro 1 provided work for other companies and Advanté. As Repro 1's manager, McGinnis conducted day-to-day operations and handled most of its clients. McGinnis received salary and bonuses based on production. The parties did not enter into any written employment contract for McGinnis' work with Repro 1.

In 1993, and with McGinnis as manager, Repro 1 did printing work for the Republican Party. Ron Butler, president of Creative Direct contacted McGinnis for this work.

---

[1] Advanté and Repro 1 will be used interchangeably as plaintiff or plaintiffs herein.

[2] Although McGinnis Technologies, Digital Ink, Inc., and Nadine McGinnis, have been identified as defendants in the pleadings, the plaintiffs did not provide any testimony or evidence against these three defendants at trial sufficient to establish liability. Therefore, the court will not address any findings as to them and will enter judgment in their favor. Also, the submissions do not mention the conspiracy count under Va. Code § 18.2-500. Accordingly, the court makes no finding as to conspiracy under that section.

In 1999, Butler again contacted McGinnis, this time for design work to be performed by Repro 1 on behalf of the Republican Party in connection with an upcoming election. McGinnis referred Butler to his wife, defendant Nadine McGinnis, who had her own business in graphic design work. McGinnis allowed his wife use of Repro 1's facilities to accomplish the work. Advanté was neither advised of nor did it receive any revenue for this graphic design work.

In 2000, Butler employed Advanté to perform pre-press and printing work for Creative Direct. Repro 1 charged Creative Direct $36,000 for its services. Creative Direct paid the amount to Repro 1 approximately six weeks after invoicing. McGinnis testified that in August 2000, Regan Coffey, Advanté's sole stockholder and owner of both Advanté and Repro 1, advised him to not accept any further work from Creative Direct due to slow payment. Beginning in September 2000, without the knowledge and consent of Advanté, McGinnis used Repro 1's facilities to perform pre-press and printing services for Creative Direct through his own business called McGinnis Technologies. McGinnis received approximately $350,000 from Creative Direct for this work while employed with Repro 1. McGinnis paid Lars Weichman, Vice President of Creative Direct, $175,000 during October 2000 through October 2002, as "commissions" or "commissions for printing." These monies were paid to Weichman directly and personally.

In March 2001, McGinnis resigned from Repro 1. Other Repro 1 employees resigned as well and became full time employees of McGinnis' new business, Digital Ink. Digital Ink was incorporated in December 2001.

McGinnis, through Digital Ink, now performs almost all of Creative's pre-press, printing and graphic design work. During the period October 2000 through October 2002, McGinnis and Digital Ink have generated over $2,000,000 in income for services rendered for Creative Direct.

*Fiduciary Duty*

Advanté and Repro 1 claim that McGinnis, as an employee, breached his fiduciary duty toward his employers.

An employee owes a duty to his employer as a fiduciary and as such cannot acquire an interest in contracts that are adverse to the employer. *Greenspan v. Osheroff,* 232 Va. 388, 400 (1986); *see also* 1A M.J., *Agency,* § 63 (1993).

The Court finds that during his employment with Repro 1, McGinnis acquired an interest in the pre-press and printing Creative Direct contracts. McGinnis' explanation that he took the Creative Direct contract because

Coffey had wanted to relinquish any further business from Creative Direct is not credible because Creative Direct made timely payment for work Repro 1 provided. Even if Coffey did say he wanted no further work from Creative Direct, which Coffey denied in his testimony, McGinnis, as Repro 1 manager, was not free to acquire the business for himself and use Repro 1's facilities without its consent. This association adversely affected Advanté and Repro 1 and caused a loss of business. The court also finds that the "commissions" paid to Weichman were payments to acquire and retain Creative's business for McGinnis himself and that such payments exceeded the value of any work Weichman ostensibly performed. Thus, McGinnis breached his fiduciary duty towards his employers, Advanté and Repro 1.

### Tortious Interference with a Contract

Next, Advanté and Repro 1 claim that McGinnis tortiously interfered with its contract with Creative Direct resulting in loss of business to Advanté and Repro 1.

An employer has a right to expect that its employee will perform under the terms of the employment contract to benefit the employer. The employer is entitled to all the profits derived as a result of the employee's efforts during the course of employment. In fact, the employer is deemed to have property rights in these profits. *Chaves v. Johnson*, 230 Va. 112, 120 (1985).

To prove tortious interference with a contract, Advanté and Repro 1 must demonstrate:

> (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Id.* at 120.

The interferer must simply have "knowledge of the business relationship" and must intend "to disturb" this relationship; malice is immaterial to the determination of this issue. *Id.* at 121-22.

Here, the court finds that Advanté and Repro 1 have proved their claims of McGinnis' tortious interference with the Creative Direct contracts. As its manager, McGinnis had knowledge of his employers' relationship with Creative Direct and intentionally caused Creative Direct to leave Advanté and

Repro 1 and work with him. These acts by McGinnis caused a direct loss of earnings for his employers, Advanté and Repro 1.

### Fraudulent Representation

Advanté claims that McGinnis misrepresented his communications with Creative Direct to Coffey and Repro 1 with the intent to mislead his employer.

To prove fraud, the claimant must prove the existence of "a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damages." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 111 (2001). The claimant must prove these elements by clear and convincing evidence. *Carley Capital Group v. City of Newport News*, 709 F. Supp. 1387, 1400 (E.D. Va. 1989) (*citing Winn v. Aleda Const. Co.*, 227 Va. 304, 315 (1984)). The alleged misrepresentation "must be of a present or pre-existing *fact*" and cause the resulting damage. *Yuzefovsky*, at 112 (emphasis added) (internal citations omitted); *see also Packard Norfolk, Inc. v. M. J. Miller*, 198 Va. 557 (1956).

In this case, Advanté has failed to establish clear and convincing evidence of a misrepresentation by McGinnis to either Advanté or Repro 1. The Court does not find any liability against McGinnis on the basis of fraud.

### Recovery of Employee's Salary by Employer

Advanté and Repro 1 claim McGinnis is liable in restitution for his salary of $42,984.11 for the period when he worked with Creative Direct for his personal benefit while in its employ.

The employee's salary is governed by a pre-existing contract. Based on this contract, the salary is a benefit that the employee has a legal right to receive from the employer. The employer, therefore, cannot seek restitution of benefits that the employee has a legal right to receive. *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (1994).

Advanté and Repro 1 have not provided sufficient evidence to determine whether McGinnis' work for Creative Direct during his employment excluded all other work for his employer at the time. The Court finds that McGinnis is not liable in restitution for his salary of $42,984.11 he received during this period.

### Damages for Tortious Interference with Contract and Constructive Trust

The court can impose a constructive trust on property acquired through improper means and if the property should not rightfully remain in the hands of the acquirer. *Rash v. Hilb, Rogal & Hamilton Co. of Richmond*, 251 Va. 281, 287 (1996) (internal citations omitted); *see also Nedrich v. Jones*, 245 Va. 465, 473 (1993); *Greenspan* at 400. Prior to imposing the constructive trust, the court must ascertain that the party in control of the funds has received the claimed proceeds. *Nedrich* at 475. The injured party must provide sufficient and reasonably specific evidence of damages based on prior earnings to hold the party tortiously interfering with the contract liable for lost profits. The lost profits claimed must arise from the contract at issue. *Lockheed Information Management Systems Co. v. Maximus, Inc.*, 259 Va. 92 (2000).

Here, the Court has found that McGinnis tortiously interfered with Advanté's contract with Creative Direct. Accordingly, the Court finds that Advanté is due $350,000, the amount of revenue McGinnis received from the Creative Direct work performed while in Advanté's employ. In addition, the Court agrees with Advanté's expert that Repro 1 and Advanté are due $597,887.79 for lost profits incurred during the period October 1, 2000, through October 23, 2002, the time following McGinnis' resignation when he began to take on Creative Direct's work. The court further finds that during the time McGinnis worked for Advanté and Repro 1, he took Creative Direct work as his own and contrived then to leave Advanté's employ with the business for his own company. The Court will impose a constructive trust on these amounts and direct McGinnis to convey them to Advanté and Repro 1.

### Compensatory and Punitive Damages

Advanté and Repro 1 claim compensatory and punitive damages due to McGinnis' fraudulent actions, malice, and wanton behavior.

The court cannot conclude that the acts McGinnis committed in breach of his fiduciary duties and tortious interference involve fraud or malice. Thus, on this basis, there is no predicate to base a return of compensatory or punitive damages. However, since Advanté and Repro 1 have pled and proved an intentional tort, the court awards Advanté $10,000 in punitive damages. *Shaw v. Titan Corp.*, 255 Va. 535, 545 (1998).

*Conclusion*

Thus, for the foregoing reasons, the court accepts the proposed findings of fact, and conclusions of law offered by Advanté and Repro 1. Mr. Ford is directed to prepare a decree consistent with this opinion in favor of Advanté and against defendant Christopher McGinnis.

March 12, 2003

After the court's letter opinion of February 6, 2003, which found in favor of plaintiff Repro 1, the parties appeared on February 21, 2003, on plaintiff's Motion for Clarification.

The parties agree, and the court concurs, that the judgment is in favor of Repro 1 only and that the judgment amount is $579,887.79 plus punitive damages in the amount of $10,000.

The next question raised by the Motion is whether the court's award of constructive trust as prayed for and as found as to defendant David McGinnis extends to Digital Ink, Inc. (Digital), the corporation that is wholly owned and controlled by McGinnis and which the court found has serviced Creative Direct, rightfully Repro 1's client, following McGinnis' departure from employment with Repro 1. Plaintiff contends that given the court's finding of a breach of fiduciary duty and tortious interference with contract and considering Digital's incorporation in December of that year, the court should treat Digital as McGinnis' alter ego in the acquisition of ill gotten gains. Thus, a constructive trust should be imposed on the corporation as well to prevent unjust enrichment.

Opposing, McGinnis argues that, in the letter opinion, the court found the evidence insufficient to impose any liability on Digital stating that there was no proof that Digital was ever in control of any claimed profits. In other words, McGinnis contends, plaintiff's evidence is insufficient and nonexistent as to tracing of a trust *res* into Digital for the imposition of a constructive trust.

In light of plaintiff's Motion, the court has reexamined Plaintiff's Proposed Findings of Fact. The proposed finding that comes closest to a finding that Digital derived any ill gotten gain is 31 which states that, during October 2000 to October 2002, McGinnis, McGinnis Technologies and Digital generated over $2,000,000 in revenue exclusively from Creative Direct. It should be noted that Digital came into existence in December 2001. To plaintiff defendant McGinnis, McGinnis Technologies, and defendant Digital is a continuum justifying imposition of a construction trust. In its support memorandum, plaintiff contends that McGinnis and Digital reaped the

vast majority of the proceeds derived from McGinnis' breaches of duty with respect to plaintiff's business expectancy with Creative Direct. The court thinks that that is what probably occurred.

In *Rash v. Hilb, Rogal & Hamilton Co.*, 251 Va. 281 (1996), the Supreme Court approved the trial court's imposition of a constructive trust. The trial court imposed the trust after finding a breach of contract, tortious interference, and common law conspiracy. In *Rash*, the parties had stipulated that the trustee defendants received 75% of all the commissions involved. In *Greenspan v. Osherhoff*, 232 Va. 388 (1986), the court found the defendants liable and imposed a constructive trust based on the "testimony of an expert economist who calculated the income loss sustained as a result of the opening of the Prince William Dialysis Center and the patients taken from" the plaintiff doctors. *Id.* at 399. In *Greenspan*, the court approved the chancellor's imposition of a constructive trust on "one half of the profits to be derived from the Prince William Dialysis Facility until the judgment under counts I and II is paid in full." *Id.* at p. 397.

In *Crestar Bank v. Williams*, 250 Va. 198 (1995), the court disallowed the imposition of a constructive trust in a suit by seventeen investors with reference to seven assets of a defaulting debtor because plaintiff failed to establish a distinct tracing of the investors' money into those assets.

As noted in the February 6th letter, the court was unable to place any liability on Digital because there was no proposed finding for relief of a constructive trust as to Digital and because evidence of funds placed in Digital and at what amount had not been disclosed by evidence.

The court has read the cases the parties have cited in plaintiff's Motion for Clarification. The cases mention the broad principles applicable to constructive trusts as creations of courts of equity whenever title to property is found in one, who, in fairness, ought not to be allowed to retain it. On the question of tracing, the court is convinced that profits wrongfully diverted from Repro 1 found their way to Digital, Inc., through the servicing of Creative Direct, the client that was rightfully Repro 1's. As in *Greenspan*, a constructive trust can arise from a breach of fiduciary duty. *Id.* at 400. The *Greenspan* court found the imposition of a constructive trust proper without actual proof of an amount being held by the trustee corporation and when the instrumentality was a product of the breach of fiduciary duty. *Greenspan v. Osherhoff*, at p. 400. And given plaintiff's expert analysis of lost profits in the time frame of October 1, 2000, through October 23, 2002, which includes the time Digital was incorporated in December 2001, there can be no doubt that those profits came to Digital and that equity would call for a constructive trust as to it.

142

For these reasons the court will impose a constructive trust as to defendant Digital Ink.