## CIRCUIT COURT OF LOUDOUN COUNTY

Adam Shehan

v.

Tyrone Rush et al.

August 20, 2008

Case No. CL 33249

BY JUDGE THOMAS D. HORNE

Plaintiff, Adam Shehan, seeks recovery of damages for injuries sustained by him as a result of a violent assault by Tyrone Rush, defendant, on premises owned and managed by the various other named defendants. Defendant Rush was, at the time of the assault, a trespasser on the premises, having no relationship to any of the tenants on the property, owner, or management company. In a Second Amended Complaint, plaintiff seeks recovery against the defendants predicated upon theories of negligence, breach of a third-party beneficiary contract, negligence *per se*, and assault and battery. Excepting only defendant Rush, each of the defendants has demurred to the allegations contained in the Second Amended Complaint.

For purposes of ruling on the instant demurrers, the Court, in accordance with familiar principles, must consider as true the facts pleaded, for:

a demurrer, unlike a motion for summary judgment, does not allow the court to evaluate and decide the merits of the claim; it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action.

*Fun v. Virginia Military Inst.*, 245 Va. 249, 252 (1993).

Furthermore, in evaluating the instant demurrers, the Court is reminded of the admonishment by our appellate courts that trial courts should not "short circuit" the litigation process.

Plaintiff has alleged that he was brutally stabbed by defendant Rush, on January 18, 2003. At the time of the assault, he was the invited guest of a tenant of The Glen, an apartment complex located in Leesburg, Virginia. Mr. Shehan suffered severe injuries and permanent scarring as a result of the attack. In the months leading to the attack, there were repeated incidents of trespass by dangerous looking individuals on the property at The Glen. A community policing officer had discussed with the owners the high level of criminal activity in the neighborhood, as well as the lack of a sense of security on the part of residents at The Glen prior to the attack.

For purposes of ruling on the demurrer, it may be inferred that the police informed the owners and managers of The Glen apartments that, as a result of criminal activity in the areas, including gang violence, the condition of the fence and lighting constituted a dangerous and immediate threat of harm to tenants and their visitors and that, as such, tenants and visitors should be warned of such immediate danger to themselves and their property.

Defendant Town and County Trust is the owner, operator, and redeveloper of the apartment complex known as The Glen. The Glen is located in the Town of Leesburg. The Glen is managed by the Town and County Management Company, L.P., a/k/a TC Operating, Limited Partnership, a/k/a The Town and Country Management Company. Defendants The TC The Glen Company, t/a The Glen, and The TC-Glen Company, a Maryland General Partnership, are other entities with an interest in the Rental and Management Agreements governing management of The Glen apartments.

Defendants installed, maintained, and operated security gates and fencing to restrict access to the rental community. The Glen is located in a neighborhood with an extensive history of violent crime. In marketing the apartments, The Glen was identified as having enhanced security. However, at the time of the assault, the gates had been broken and in disrepair for a number of months. In addition, lighting of the parking lot was improperly

maintained in the area where the assault on the plaintiff occurred. Defendant Rush entered the complex through the broken gate and assaulted the plaintiff in a poorly lit area of the parking lot.

Plaintiff contends that, at the time of the assault, those defendants interested in the rental and management of The Glen apartments owed a duty to the plaintiff, a licensee and social guest of a tenant, to exercise ordinary care to keep the common area of the apartment complex where the assault took place in a reasonably safe condition and that their failure to do so was the proximate cause of plaintiff's injury and damages at the hands of the knife-wielding criminal defendant. Thus, he suggests that the apartment complex attracted and provided a climate for assaultive crimes by, among other things, permitting the security gates to remain in disrepair for a number of months preceding the attack, negligently ignoring the history of violent crimes within the immediate vicinity of the premises that posed an immediate risk of harm to tenants and their guests, doing nothing to address criminal activity occurring on the property of The Glen, failing to warn tenants and their guests of the violent criminal activity on and around the premises, and in not taking steps to correct improper and inadequate lighting.

As previously noted, the four-count Second Amended Complaint sets forth claims against the defendants based upon common law negligence, breach of a third-party beneficiary contract, negligence *per se*, and assault and battery. With the exception of Counts I and II of the Second Amended Complaint, the demurrers will be sustained and the complaint dismissed as to each such count for the reasons set forth herein.

One commentator has observed that:

> there is no duty on the part of a defendant to control the conduct of a third person so as to prevent that third person from causing harm to the plaintiff. However, such a duty arises where a "special relationship" exists between the defendant and the third person who causes the injury and may also arise where a special relationship exists between the defendant and the plaintiff. . . . One characteristic of a "special relationship" is that it provides a right of protection to a plaintiff by a defendant from the criminal acts of third persons that can be reasonably foreseen or anticipated.

Friend, *Personal Injury Law in Virginia* (3d ed.), p. 30.

The duty of a landlord to a tenant to warn or prevent injury by third parties is not absolute. A determination as to the existence of such a duty is subject to a finding that a special relationship exists between them that gives rise to a duty to protect or warn. In general:

> [a] landlord owes the duty to his tenants to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which he has control. However, a landlord is not an insurer of his tenant's safety. Traditionally, the obligation of the landlord is associated with maintaining the areas over which he has control in good repair and free of latent defects, rather than the duty to police. As a general rule, a landlord does not owe a duty to protect his tenant from a criminal act by a third person.

*Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157 (1974) (authorities omitted).

Whether or not a landlord will be held liable to a tenant for injuries sustained as a result of the acts of a third party is "always fact specific and, thus, not amenable to a bright-line rule for resolution." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 106 (2001).

In order to hold a landlord liable for injuries caused to a tenant by a third-party criminal actor, there must exist a special relationship between the landlord and tenant. As the Supreme Court of Virginia has noted:

> we have consistently rejected the contention that the relationship of landlord and tenant, without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party. . . . Thus, as a general rule, we have interpreted the landlord's duty as being limited to maintaining in good repair and free of latent defects the areas over which the landlord has control, and not to require the landlord "to act as a policeman. . ." to protect his tenant from a criminal act by a third person.

*Yuzefovsky*, at 108 (authority omitted).

In the case of an injury by the criminal act of a third person upon business premises, it has been held that:

> a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault

unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee.

*Wright v. Webb*, 234 Va. 527, 533 (1987).

However, the existence of a special relationship is one, "between particular plaintiffs and defendants, either as a matter of law or because of the particular circumstances in a given case, which may give rise to a duty of care on the part of the defendant to warn and/or protect the plaintiff against the danger of harm from the reasonably foreseeable criminal acts committed by a third person." *Thompson v. Skate America, Inc.*, 261 Va. 121, 129 (2001). In the case of a business invitee, the "imminent probability of harm . . . is merely a heightened degree of the 'foreseeability' of that harm." *Id.* at 130.

The duty owed by a landlord to a tenant, where a special relationship is found to exist, is the same whether the duty is one to warn or protect. However, in order for a duty to arise, the pleadings must establish that it was reasonably foreseeable that acts of criminal violence would be committed upon tenants. *Gulf Reston, Inc. v. Rogers*, 215 Va. 155 (1974). That is, the plaintiff must, plead sufficient facts from which it may be concluded that he was in imminent danger of harm from a criminal assault by a third party of which the defendants were aware. *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 110 (2001).

In contrast to this heightened decree of foreseeability required in the case of an invitee or tenant, a distinction has been drawn with the relationship of innkeeper and guest. Distinguishing between the two, the Supreme Court of Virginia has observed:

> unlike a landlord, an innkeeper is in direct and continued control of the property and usually maintains a presence on the property personally or through agents. Thus, "while a lessee may be expected to do many things for his own protection," an innkeeper's guest is not as well situated to do so.

*Taboada v. Daly Seven, Inc.*, 271 Va. 313, 324 (2006) (authorities omitted).

Like a common carrier, the special relationship between innkeeper and guest, imposes a duty upon the innkeeper to:

take reasonable precautions to protect his guests against injury caused by the criminal conduct on the part of other guests or strangers, if the danger of injury by such conduct is known to the innkeeper or reasonably foreseeable.

*Taboada*, at 325.

As opposed to the special relationship that must be established as a predicate to recovery against a landlord for an injury to an invitee or tenant, the relationship of innkeeper and guest, once shown to exist, is as a matter of law a special relationship giving rise, upon a showing of foreseeable harm, to a duty to warn and protect their guests from assaults by third parties.

In the instant case, the plaintiff was neither an invitee nor tenant on the property. He was a social guest of a tenant or a bare licensee. It may be argued, as have the defendants, that no "special relationship" exists between the plaintiff and the owners and managers of the property under such circumstances, as a matter of law, that would give rise to premises liability for the criminal acts of third parties to a social guest of a tenant. However, for purposes of ruling on the demurrer, the court will assume, without deciding, that, under the facts as pleaded in this case, "the duties and liabilities of the landlord to the guests and invitees of the tenant, with respect to personal injuries. . ." are those owed to the tenant. *See, Oliver v. Cashin*, 192 Va. 540, 543 (1951).

The pleadings, when viewed within the context of a demurrer, establish that it was reasonably foreseeable to the defendants at the time of the assault on the plaintiff that there existed conditions that rendered it reasonably foreseeable that social guests of tenants were in immediate danger of harm at the hands of a violent criminal element. Such foreseeability is garnered from what was known to the defendants from reports by tenants and meetings with the police as well as a familiarity with the dilapidated condition of the gate, fencing, and lighting of the premises. However, this does not mean that plaintiff has set forth sufficient facts from which it may be concluded that, by defendants' failure to make such repairs, they attracted or provided a climate for assaultive crimes. *Wright v. Webb*, 234 Va. 527, 533 (1987). An absence of gating, fencing, and adequate lighting do not, in themselves, attract or provide a climate for such activity. It is the heightened degree of foreseeability of future assaults based upon prior conduct that is the linchpin to the question of liability. *See, A.H. v. Rockingham Publishing Co.*, 255 Va. 216, 223 (1998). This issue of common law liability for the attack is the singular action in tort that finds support in the second amended complaint when the second amended complaint is reviewed only by plaintiff's view of the facts.

Plaintiff asserts that the defendants voluntarily assumed a duty to protect or warn the plaintiff under the circumstances. As to the issue of the assumption of duty by a defendant within the context of a criminal assault by a third party, Justice Whiting writing for the Supreme Court of Virginia, has observed:

> [d]uties imposed upon defendants and the violations of those duties are premised upon the objective concept of what a reasonably prudent person in the exercise of reasonable care would have done in similar circumstances. *Hall v. Hall*, 240 Va. 360, 363, 397 S.E.2d 829, 831 (1990). A defendant ordinarily cannot create duties to act merely by taking precautions not required of a reasonably prudent person exercising reasonable care in the absence of affirmative acts of negligence on his part in taking the precautions.

*Rockingham Publishing Co.*, at 223.

Defendants were under no duty imposed by law to construct the fence or gate so as to limit access to the premises, albeit, the property was located in a high crime area. Having undertaken to construct the fence, the duty of the landlord to tenants and their guests to see to its repair would be governed by the contract of tenancy or by the foreseeability of injury by criminal acts. To do otherwise, would give rise to a duty imposed upon a landlord that would, "discourage other parties from taking extra precautions to avoid being subjected to a liability which they otherwise would not have had." *Id*.

Accordingly, the Court finds that Count I of the second amended complaint will withstand scrutiny on demurrer. This will permit discovery on the issue and defendants may raise the issue by way of summary judgment at a later time. When considering the facts pleaded as true, as well as those facts implied or as may be fairly inferred from such facts to be true, the pleading supports recovery by the plaintiff for injuries suffered at the hands of the defendant Rush. *Luckett v. Jennings*, 246 Va. 303 (1993). The demurrer will be overruled as to Count I.

The demurrer as to Count III will be sustained. As previously noted, the owner and property manager owed a common law duty to the social guest of a tenant. In this count the plaintiff seeks to recover upon a theory of *per se* negligence, relying upon the legislatively defined standard of care owed by landlords to others pursuant to the Virginia Residential Landlord and Tenant

Act (Va. Code Ann. § 55-248.13) and the National Property Maintenance Code (' PM 303.3). The Supreme Court of Virginia has interpreted the Virginia Residential Landlord and Tenant Act as follows:

> [r]eading the Act as a whole, we conclude that the General Assembly did not plainly manifest an intention, either through express language or by necessary implication, to abrogate the common law and make a landlord liable in tort for a tenant's personal injuries sustained on leased premises within the tenant's control and possession as a result of the landlord's breach of duties imposed by the Act. Instead the Act provides a comprehensive scheme of landlords' and tenants' contractual rights and remedies.

*Isbell v. Commercial Investment Assocs.*, 273 Va. 605, 618 (2007).

Defendants' liability that may be attributable to their failure to protect and warn plaintiff of imminent harm is governed by the common law rules of accountability discussed at length above.

The demurrer to Count II will be overruled. It is not necessary to plead the written contract on demurrer. A contractual duty owed by the landlord to the social guest of a tenant for injury by a third party may arise out of the agreement forming the tenancy. The pleadings are sufficient to allege a claim as a third-party beneficiary of agreements between the landlord and tenant. To the extent the damages claimed are for pain, suffering, and mental anguish, they may nevertheless be recovered as consequential damage, if proven. *Guffey v. Virginia Beach General Hosp.*, 21 Va. Cir. 401 (1990). This count may likewise be the subject of a motion for summary judgment after discovery in the case and the record is more complete.

Count IV alleges an action for assault and battery. As to all but defendant Rush, the demurrer will be sustained. There are no facts pleaded that would support an action against the remaining defendants for the assault other than may arise from the management agreement and the lease with the tenant the plaintiff was visiting at the time of the assault.