# CIRCUIT COURT OF MONTGOMERY COUNTY

Grafton William Peterson,
Administrator
of the Estate of
Erin Nicole Peterson,
deceased

 v.

Commonwealth of Virginia et al.

Case No. CL09-005525

Harry W. Pryde
and Karen W. Pryde,
Co-Administrators
of the Estate of
Julia Kathleen Pryde,
deceased

 v.

Commonwealth of Virginia et al.

Case No. CL09-005526

January 12, 2010

22

By Judge William N. Alexander, II

Since the complaints filed by plaintiffs are essentially the same and, likewise, since the Demurrer and Special Pleas of Sovereign Immunity are essentially the same for each group of the defendants, I will address the demurrers and special pleas of all parties in one letter.

I have received copies of the Second Amended Complaints as well as the objections to the filing of the amended complaints. I have not read these complaints and will take no action on them until after a hearing has been held.

All claims against Christopher Flynn, Sandra Ward, Wendell R. Flinchum, James Thomas Brown, and Kay K. Heidbreder have been dismissed by an order of nonsuit entered on the 8th day of January 2010.

I. *Plea of Sovereign Immunity of the Commonwealth of Virginia and of the Individual Defendants, Charles W. Steger, James A. Hyatt, Mark G. McNamee, David R. Ford, Lawrence G. Hincker, and Ralph M. Byers (Virginia Tech Officials)*

Defendants, the Virginia Tech officials, maintain the claims of the First Amended Complaint must be dismissed against them because as high-ranking governmental officials they are protected by absolute immunity. The initial question confronting this court is whether any, or all, of these officials are entitled to absolute immunity by virtue of their

positions at Virginia Tech, are entitled to immunity from simple negligence claims or entitled to no immunity at all.

The doctrine of sovereign immunity is "alive and well" in Virginia. *Messina v. Burden*, 228 Va. 301, 307 (1984). As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action. *Hinchey v. Ogden*, 226 Va. 234, 239 (1983). Only the legislature acting in its policy-making capacity can abrogate the Commonwealth's immunity. *Commonwealth v. Luzik*, 259 Va. 198, 206 (2000). A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute. *Hinchey*, 226 Va. at p. 241. The Virginia Tort Claims Act does provide a limited waiver of the state's immunity from tort claims but it does not waive sovereign immunity as to the Commonwealth's employees. The Act provides that:

> Notwithstanding any provision hereof, the individual immunity of judges, the Attorney General, attorneys for the Commonwealth, and other public officers, their agents and employees from tort claims for damage is hereby preserved to the extent and degree that such persons presently are immunized.

Va. Code Ann. § 8.01-195.3

In *James v. Jane*, 221 Va. 43, 53 (1980), the Supreme Court in its discussion of sovereign immunity recognized that valid reasons still exist for state employee immunity, but also said the argument for immunity "does not have the same strength it had in past years" because of the intrusion of government into areas formerly private and because of the tremendous increase in the number of state employees. The Court found "no justification for treating a present day government employee as absolutely immune from tort liability, just as if he were an employee of an eighteenth century sovereign." The Court noted that:

> It is proper that a distinction be made between the state, whose immunity is absolute unless waived, and the employees and officials of the state, whose immunity is qualified, depending upon the function they perform and the manner of performance. Certain state officials and state employees must of necessity enjoy immunity in the performance of their duties. These officers are inclusive of,

but not limited to, the Governor, state officials and judges. They are required by the Constitution and by general law to exercise broad discretionary powers, often involving both the determination and implementation of state policy.

*James*, p. 53. Later, in *Messina*, the Court stated:

There is very little debate regarding the extension of the doctrine of sovereign immunity to those who operate at the highest levels of the three branches of government. Governors, judges, members of state and local legislative bodies, and other high level governmental officials have generally been accorded absolute immunity. General agreement breaks down, however, the farther one moves away from the highest levels of government.

*Messina, supra,* at p. 309 (citations omitted).

The Court in *Alliance to Save the Mataponi*, 270 Va. 423 (2005), concluded the Commonwealth was immune. The Court also held that the Executive Secretary of the Water Control Board, occupied a high-level governmental position and, while acting in his official capacity, was entitled to absolute immunity. The Court said:

As we explained in *Messina v. Burden,* the purposes of the doctrine of sovereign immunity cannot be achieved by affording protection solely to the sovereign itself, because the Commonwealth can act only through its individual employees. If every government employee were subject to suit, the Commonwealth would be as hampered in its operations as if it were the actual subject of the suit. Thus high-level governmental officials generally have been afforded absolute immunity.

*Alliance*, p. 455 (citation omitted).

It seems safe to conclude that high-level governmental officials are absolutely immune from actions at law for damages and suits in equity to compel or restrain governmental action while acting in their official capacities. If an official is a high-level governmental official, he or she is absolutely immune and no other factors like those set out in *James, supra,*

at pp. 53-54, and further discussed in *Messina, supra,* at pp. 313-14, need be considered.

What is not so clear is what defines a high ranking governmental official. The cases give little guidance to aid in the analytical process. Those persons, like Mr. Burnley, the Water Control Board's Executive Secretary, who are appointed by the Governor or the General Assembly, whose duties and responsibilities are described by statute, and whose duties involve application of state law and policies statewide are high-level governmental officials protected by absolute immunity.

The Virginia Tech officials are not appointed by the Governor or the legislature. The Governor, appoints the Board of Visitors, who at all times is under the control of the General Assembly. The Board of Visitors appoints the president and vice-president and the other officials as necessary.

While the Board is required by statute, Va. Code Ann. § 23-1262, to appoint a president, neither the duties of the president or the vice-president are set by statute. In contrast, the Board of Visitors' duties, responsibilities, and powers are set by statute. The Board is charged with the care, preservation, and improvement of the university's property, the control of its property, the protection and safety of its students, and the government and discipline of its students. The Board is to govern the university by making such regulations as are necessary. The Board appoints the university's professors, sets their salaries, and prescribes the duties of each. The Board is charged with administering the Virginia Cooperative Extension and Agricultural Experiment Station Division, a division of the university.

Unlike the Director of the Water Control Board, the Virginia Tech officials administer only the policies of the university as set by the board of visitors. The officials do not administer any policy or regulation that affects the state as a whole. The duties of these officials are important, affect a number of people, both students and employees, in different locations across the state, but are limited solely to running Virginia Tech.

Accordingly, I find the Virginia Tech officials are not high-ranking state officials and are not accorded absolute immunity while in the performance of their duties.

Having determined that the Virginia Tech officials are not high-ranking governmental officials, the court must determine whether, as state employees, they are protected by sovereign immunity. As employees of Virginia Tech, they work for an immune body. The immunity determination is to be made by a consideration and analysis of the factors

developed in *James v. Jane*, at 53, and further discussed in *Messina v. Burden*, at 312-13. Among the factors the court must consider are:

1. The nature of the function performed by the employee;
2. The extent of the state's interest and involvement in the function;
3. The degree of control and direction exercised by the state over the employee; and
4. Whether the act complained of involved the use of judgment and discretion.

Each of these factors weighs in favor of according these officials immunity. All of these officials occupy executive type positions with Virginia Tech and participate in its management and operation. The state has a great interest and involvement in the operation of its largest university. The Board of Visitors is charged with running the university, and, by statute the board "shall at all times be under the control of the General Assembly." Va. Code Ann. § 23-114. Other statutes also direct the operation, maintenance, and functions of the school. As required by statute, the president and vice-president are appointed by the board, serve at its pleasure and are accountable to the Board. The Board appoints the remaining members of the Emergency Policy Group as well. The president and vice-president have broad discretionary powers and must use judgment in performing their duties. Whatever decisions were made during the Emergency Policy Group's deliberations, of necessity, involved judgment and discretion.

Accordingly, I find the president, vice-president, and other members of the Emergency Policy Group to be governmental employees and protected by immunity. Consequently, sovereign immunity bars the simple negligence claims against them.

II. *Demurrer of Commonwealth of Virginia, Charles Steger, James Hyatt, Mark McNamee, Lawrence Ford, and Lawrence Hincker*

Defendants demur to the complaints on the basis that they owe no legal duty to plaintiffs' decedents to warn or protect them from the criminal acts of third parties. The facts alleged in the complaint must establish a duty of care. Whether a duty of care exists is "a pure question of law." *Burns v. Johnson*, 250 Va. 41, 45 (1995). If the allegations are legally sufficient to establish a duty as a matter of law, then it becomes a

matter for the jury, upon the evidence, to "determine whether the duty has been performed." *Yuzefovsky v. St John's Wood Apartments*, 261 Va. 97, 106 (2001) (quoting *Acme Markets, Inc v. Remschel*, 181 Va. 171, 178 (1943)).

Plaintiffs allege that defendants had a statutory duty to provide a reasonably safe campus for their decedents to pursue their education and they were owed, at a minimum, the common law duties owed a business invitee.

A business invitee is owed the same duty of reasonable care that a landlord owes a tenant and "ordinarily, the owner or possessor of land is under no duty to protect invitees from assaults by third parties while the invitee is upon the premises ... [unless] there is a special relationship between [the] possessor of land and his invitee giving rise to a duty to protect the invitee from such assaults." *Wright v. Webb*, 234 Va. 527, 530 (1987). In discussing *Wright*, the Court in *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 138 (2001), recognized that the relationship between a business invitor and invitee is one of these "special relationships" but that bare relationship alone was insufficient to create an absolute duty of the business invitor to warn or protect its invitees from criminal assaults from unknown third parties.

In *Yuzefovsky, supra* at page 106, the court said "The question of when and under what circumstances an owner of occupier of land will be required either to warn his invitees or tenants of, or protect them against, harm from the criminal act of a third party is always fact specific and, thus, not amenable to a bright-line rule for resolution." The Court recognized that there were some narrow exceptions to the general rule against liability but noted that it had rarely found the circumstances to warrant an exception. *Id.*

The Court also set out the general analysis gleaned from prior cases to be used in determining whether an exception to the general rule applies. First, a "plaintiff must establish there is a special relationship, either between the plaintiff and the defendant or between the third party criminal actor and the defendant." (Citation omitted.) This relationship may be one already recognized or it may arise from the factual circumstances of a particular case. Second, the plaintiff has to "establish that the special relationship creates a duty of care, such as to warn or protect the plaintiff, as a result of the particular circumstances of that special relationship, including the known or reasonably foreseeable danger of harm to the plaintiff from the criminal act of the third party." *Id.* p. 107. But, citing *Wright, supra*, p. 533, the Court observed that an invitor owed no duty to

protect his invitee against criminal assault "unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm." The same standard is used to determine whether a business invitor, in a special relationship, has a duty to warn an invitee of potential danger of criminal activity by a third party as is used to determine whether he has a duty to protect. *Id.*, p. 109.

Plaintiffs have alleged sufficient facts to establish that the decedents were owed at least the duties owed to business invitees. As a result, a special relationship exists. *See Dudas*, p. 138. Plaintiffs have also alleged particular circumstances of the special relationship that create a duty to protect and/or warn the decedents of a probability of imminent harm. Among the particular circumstances alleged are that the decedents were students at Va. Tech, the existence of Va. Code Ann. § 2-122 charging the Board "with the protection and safety of students and other persons residing on the property," that defendants knew many facts about the first killing and wounding before any statement was made, that the mass killing began some 2½ hours after the officials learned of the first killing and wounding, that the defendants knew that criminal assaults had very recently occurred, that they knew the killer(s) was unknown and at large, that the killing and wounding had occurred in a dormitory, that there was sufficient time between the first killings and the mass killing for the officials to warn the university community of the danger, that there were many other students and members of the university community nearby, and that the Emergency Policy Group had locked down Burrus Hall, its meeting place. Plaintiffs have alleged that these defendants knew that criminal assaults had occurred, including one murder, on the university campus, which would indicate a probability of imminent harm to other students or members of the university community.

Accordingly, I find that plaintiffs have alleged facts sufficient to establish a duty to warn and/or protect Julia Pryde and Erin Nicole Peterson. Plaintiffs have stated a cause of action against these officials and the Commonwealth. The facts alleged in the First Amended Complaint, if proven, are sufficient to established gross negligence. The Demurer will be overruled as to Charles W. Steger and James Hyatt.

The amended complaint does not state a cause of action against Larry Hincker, Ralph Byers, David R. Ford, or Mark G. McNamee. The only allegations against these officials are that they were members of the Emergency Policy Group, that the group was split into two groups, one being the safety group advocating a campus alert as to the danger and one

group being the image group arguing for delay in issuing any statement. Steger and Hyatt are the only officials alleged to have the authority to issue an alert or warning. There are no facts alleged that support that any one of these officials had a duty to warn or protect plaintiffs' decedents.

The Demurrer as to these officials is sustained, and the complaint against each is dismissed.

III. *Plea of Sovereign Immunity of Robert E. Miller, Ed. D., Cathye Betzel, Psy. D., and Sherry Lynch Conrad, Ph. D., L.P.C.*

Defendant Miller maintains all claims stated against him in the First Amended Complaint should be dismissed because, as a high-level governmental official, he is protected by absolute immunity. As the director of Cook Counseling Center, he was responsible for the planning and oversight of the mental health services provided by the Center and insuring that the students received quality mental health services. Like the Virginia Tech officials, he does not administer any policy or regulation that affects the state as a whole. He is employed by the Board of Visitors to operate the Center and administer to the university students. He sets no policy except as it might apply to the Center and its employees and patients. I find that he is not a high-level governmental protected by absolute immunity.

In support of their Plea of Sovereign Immunity, defendants presented evidence from Christopher Flynn, Ph. D., the current director of the Cook Counseling Center. The facts recited hereafter are from his testimony at the hearing held on December 14, 2009.

Dr. Miller, the former director of the Center, was responsible for the planning and oversight of the Center, and for insuring that the Center provided Virginia Tech students with quality mental health services as needed. Cathye Betzel is the Director of Training, and Sherry Lynch Conrad is a staff counselor, All are Commonwealth employees. They receive no compensation other than that paid by the Commonwealth. The defendants do not have a private practice; they treat only students; and they cannot pick and choose which students to treat.

As part of each student's tuition and fees, a fee of $150.00 per semester is included for the use of the medical center including the services of the Center. When treatment is provided, no additional fee is charged a student and no bill is sent for the services. The Center's operating budget is part of Virginia Tech's budget and sent to the Legislature for approval. The school provides the Center's facility and all

equipment. There can be no individual contracts between the service providers and the students for services.

In support of their plea of sovereign immunity, defendants rely on *Lohr v. Larsen*, 246 Va. 81 (1993), a case in which the court held a public health physician was entitled to the protection of sovereign immunity. In deciding the public health physician was entitled to immunity, the Court applied the *James v. Jane* test. In applying the test, the Court looked first looked to the employee's function and the Commonwealth's interest in that function. The Court referring to *James* said:

> We indicated that, if the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity. On the other hand, if that function has only marginal influence upon a governmental objective, and the government's interest and involvement in that function are "slight," these factors weigh against granting governmental immunity to a government employee.

*Lohr*, at p. 85 (citations omitted).

The Court concluded that the Commonwealth had a great interest and involvement in the public health physician's function and quoted the trial court's finding that "the commonwealth is attempting to provide quality medical care in certain specified areas for citizens of the State who are economically unable to acquire those services in the private sector." *Id.* The Court noted the trial court, in its finding, had quoted the General Assembly's description of the purposes of its overall health program from Va. Code Ann. § 32.1-2 that "the protection, improvement, and preservation of the public health and of the environment are essential to the general welfare of the citizens of the commonwealth." *Id.*, p. 86.

These defendants are an integral part of the Center's providing of mental health services to that part of the Virginia Tech student body in need of them. However the Center, unlike the physician in *Lohr*, does not provide care to citizens of the state who are economically unable to pay for them, but provide services to students who pay for the services each semester as a part of their fees." Also, the Center does not play an integral role in the Commonwealth's providing mental health services to the

general population. The Center's services are not essential to the general welfare of the citizens of the Commonwealth.

Clearly, these defendants exercise judgment and discretion in treating the students. But this factor is not determinative:

The last part of the test requires an examination of the control and direction of the employees. These employees are required to provide services, if requested, to the members of the student body who have pre-paid for the services. They provide no services to the public. The facility and equipment are provided. In *Lohr* the state dictated the procedures that the physician could perform, "absolutely" the equipment that could be used, and even the "brand names of the medications" that could be prescribed. This is in stark contrast to the control exercised over the Center's employees. These defendants had complete control of the nature, manner, and timing of the treatment to be administered.

Considering these factors I find that defendants, Miller, Betzel, and Lynch Conrad are not protected by sovereign immunity.

Defendants Betzel and Conrad assert they have provided medical services to Cho and as a result are protected by statutory immunity:

> B. A mental health service provider has a duty to take precautions to protect third parties from violent behavior or other serious harm only when the *client* has orally, in writing, or via sign language, communicated to the provider a specific and immediate threat to cause serious bodily injury or death to an identified or readily identifiable person or persons, if the provider reasonably believes, or should believe according to the standards of his profession, that the *client* has the intent and ability, to carry out that threat immediately or imminently. ... The duty to protect does not attach unless the threat has been communicated to the provider by the threatening *client* while the provider is engaged in his professional duties.

And:

> D. A mental health service provider shall not be held civilly liable to any person for:
> Failing to predict, in the absence of a threat described in subsection B, that the client would cause the third party serious physical harm.

> Failing to take precautions other than those enumerated in subsection C to protect a potential third party victim from the client's violent behavior.

Va. Code Ann. § 54.1-2400.1 (emphasis added).

The statute defines "client" as any person who is voluntarily or involuntarily receiving mental health services ... from any mental health services provider." Va. Code Ann. § 54.1-2400.1(A). The First Amended Complaint alleges Cho was triaged twice, once in person and once by phone, but is also replete with allegations the defendants had these and other opportunities to provide needed mental health treatment but failed to do so. As a result Defendants argue that Cho was a client and these triage assessments were "counseling interventions designed to remediate Mr. Cho's mental, emotional, and behavioral disorders."

It may be that triage does put Cho within the statutory definition of "client." At this stage of the proceeding, this is not clear at all. Evidence will have to be taken to establish whether or not Cho was a client. Since this is a factual determination, it may be a jury question.

IV. *Demurrer of Robert C. Miller, Ed. D., Cathye Betzel, Psy. D., Sherry Lynch Conrad, Ph. D., L.P.C.*

These defendants demur on the ground that the First Amended Complaint fails to state a cause of action against any of them, that they owed no legal duty to plaintiffs' decedents with regard to third-party criminal acts, that insufficient facts are alleged to support a claim that any acts or omissions of the defendants was the proximate cause of Plaintiffs' decedents' deaths, and the allegations fail to support a claim of gross negligence.

The defendants do have a duty to provide for the protection and the safety of students including Erin Peterson and Julia Pryde. Va. Code Ann. § 23-122 imposes such a duty on the Board of Visitors. In turn, the board is to appoint a president and employ such other agents or servants necessary to carry on the functions of the university. Va. Code Ann. § 23-126. Plaintiffs allege that Miller, as Director of the Cook Counseling Center, was responsible for ensuring those students needing mental health services were appropriately handled and that faculty concerns about students were appropriately addressed.

The amended complaint contains numerous allegations and cites numerous instances of fact concerning Cho's abnormal actions, his

problems in class, his relations with others, etc. and of the failure of these defendants, who are charged with ensuring proper mental health services are provided students, to take the necessary steps to provide for Cho's safety and the safety of other students. It is evident from the complaint that plaintiffs are not asserting claims against these defendants for failing to control the conduct of Cho. Plaintiffs' claim against these defendants is for failing to provide the proper mental health services to treat Cho.

A third party can be held liable for failing to take action necessary to protect one from criminal acts of third parties. The complaint alleges that the decedents were college students and as such were, at least, business invitees. While the general rule is that a business invitor does not normally have the duty to warn or protect an invitee from the criminal acts of third parties, there are exceptions. In determining whether an exception to the general rule applies, the Court in *Yuzefovsky v. St, John's Wood Apts.*, 261 Va. 97, 107 (2001), set out a two-part test to help determine if an exception applies.

First the plaintiff must establish there was a special relationship between the plaintiff and defendant or between the defendant and third party. Here, there was a special relationship between the university and the decedents, that of business invitor-invitee. The same special relationship existed between Cho and the university.

In addition the special relationship can also arise from the facts of a particular case. The decedents were students at Va. Tech, and the provisions Va. Code Ann. § 37.2-187 evidence, at the very least, a special relationship has been created between Va. Tech and its students. Plaintiffs and defendants disagree as to the purpose and import of the language of this Statute. Neither can point to any Virginia case that either aids his position or harms the other's position. Defendants contend this is not a safety statute and imposes no duty on any Va, Tech employee to protect its students and calls plaintiffs' position "absurd." However, this Statute, unlike any other statute setting forth the duties of other Virginia university boards, does charge the Board of Visitors "with the protection and safety of students and other persons residing on the property. . . ." I find the facts alleged also give rise to a special relationship.

The second part of the test is that the plaintiffs "must establish that the special relationship creates a duty of care such as to warn and/or protect" plaintiffs' decedents "as a result of the particular circumstances of that special relationship." This special relationship does create a duty of care. By statute, Va. Tech is to provide for the protection and care of its

students. The court, citing *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159 (1974), stated that:

> Because the imposition of those duties "does not depend upon foreseeability [of harm to the plaintiff] alone," consideration must be given to the "magnitude of the burden of guarding against [harm to plaintiff] and the consequences of placing that burden on the defendant."

*Yuzefovsky, supra*, pp. 140-41.

The magnitude of the burden of guarding against harm to these decedents is slight. These defendants simply needed to provide Cho the services to he needed. The consequences of placing that burden on these defendants are simply that they would be required to perform the functions for which the office was created and the duties for which they were employed. The burden of protecting and providing safety to the students is slight. These defendants are trained and set up to identify and treat mental health problems of the students.

I find these defendants owe a duty of care to the decedents to provide mental health services to Cho and, thus, to protect him as well as the other students. The Amended Complaint states sufficient allegations against these defendants for negligence.

Causation will be determined after the evidence has been more fully developed.

Accordingly, the demurrer is overruled.

## V. *Demurrer of the New River Valley Community Services Board, Harvey M. Barker, Ph. D., and H. Lynn Chenault Claiming These Defendants Are Immune from Liability because of the Doctrine of Sovereign Immunity and That the Allegations of the Amended Complaint Are Insufficient To Establish Gross Negligence*

As plaintiffs allege, The New River Community Services Board is an entity created by the localities of Floyd, Giles, Montgomery, Pulaski, and the City of Radford. Defendant Chenault was the Executive Director of New River Valley Community Services Board, and Defendant Barker was its Director of Emergency and Assessment Services. The NRCSB was created because of the mandate of Va. Code Ann. § 37.2-500, requiring every county, either by itself or in conjunction with other counties, cities, and towns, to create a community services board or similar governmental

agency. The statutory purpose of the CSB is to provide a core of services that must include emergency services, and, if funds are available, case management services. The core of services can include a comprehensive system of appropriate mental health, mental retardation, and substance abuse services. Barker and Chenault are employees of the NRCSB and not employees of the Commonwealth.

It appears that the question of whether a community service board and its employees are entitled to sovereign immunity is one of first impression. First, the court must first decide whether the CSB is an "arm" or agency of the Commonwealth and entitled to the same immunity from tort liability as the state or is it more like a municipal corporation. If the CSB is like a municipal corporation, whether it has immunity or not requires the court to determine whether the CSB was engaged in a governmental or proprietary function.

The CSB is a political subdivision created by statute mandating its creation. The Supreme Court of Virginia, in *Carter v. Chesterfield County Health Commission*, 259 Va. 588 (2000), held that a county health commission operating a nursing home was a political subdivision created by the county pursuant to statutory authorization and entitled to the status of a municipal corporation for purposes of immunity. The only difference in the creation of these two entities is that the creation of the CSB is mandated while the health commission is authorized by statute only after the county determines there is a public need and the nursing home services were necessary to protect the public health and welfare.

I find the CSB should be treated as a municipal corporation for purposes of tort immunity.

The question now is whether the CSB was engaged in a proprietary or governmental function. "Where a local government exercises powers delegated or imposed, it performs a governmental function." *Edwards v. City of Portsmouth*, 237 Va. 167, 171 (1989) (citations omitted). The test is whether, in providing the services, "the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens." *Id.*, p. 172. I find the providing of mental health services by the CSB is not a ministerial act of a proprietary nature but an exercise of the power delegated to the CSB for the general benefit and well-being of the population it serves and governmental in nature.

The CSB and the individual defendants are entitled to immunity from simple negligence. The allegation that the CSB did not comply with its statutory direction does not change the immunity

Plaintiffs allege the CSB and the named defendants violated the mandates of Va. Code Ann. § 37.2-817, Defendants were required to recommend a specific course of treatment and programs for the provision of involuntary outpatient treatment to Cho. The defendants were also required to monitor Cho's compliance with the treatment. It is alleged that the CSB did neither.

While the allegations of the complaint are certainly sufficient to establish simple negligence, I find they are insufficient to rise to the level of gross negligence or intentional conduct.

Accordingly, the demurrer is sustained and the complaint will be dismissed as to these defendants.