# CIRCUIT COURT OF FAIRFAX COUNTY

Marilyn Orange,
Administrator
of the Estate of
Genevieve Orange,
deceased

v.

Berkshire Property
Advisors, L.L.C., et al.

Case No. CL-2010-11571

By Judge Randy I. Bellows

August 10, 2011

On July 29, 2011, this Court heard oral argument on the Demurrer of Defendant Liberty Screening Services, Ltd. At the conclusion of the hearing, the Court informed the parties that it would take the matter under advisement and that they may file any additional case law or authority to aid the Court in its decision. After reviewing the parties' briefs and in light of the oral arguments made and supplemental authorities provided, the Court is now prepared to rule.

This case arises out of the September 2008 murder and rape of Genevieve Orange ("Ms. Orange"). The Demurrer presents the following question. In the Commonwealth of Virginia, does an independent duty sounding in tort exist where a party's negligent performance under a contract causes physical harm or death to a third party. While there is no case law in Virginia that is precisely on point, the Court finds that a negligence claim may be pleaded

in these circumstances. Because the Plaintiff asserted a claim of "negligent hiring," rather than negligence, the Demurrer must be sustained. However, it is without prejudice, and the Plaintiff may amend her complaint to assert a claim of negligence.

## I. *Background*

Plaintiff Marilyn Orange brings the instant wrongful death action as the administratrix of her daughter's estate. On or about September 25, 2008, Ms. Orange was murdered in her rental unit at the Prestwick Apartments, allegedly owned by Defendant BVF-II Prestwick, L.L.C., and managed and/or operated by Berkshire Property Advisors, L.L.C. (collectively, the "Berkshire Defendants"). (Complaint ¶¶ 3-5.) On February 22, 2011, Defendant Mark Lawlor was found guilty of the capital murder and rape of Ms. Orange and was later sentenced to death. At the time of the incident, Lawlor was allegedly an employee of the Berkshire Defendants who "functioned in the role of a building superintendent performing overall maintenance and upkeep of the building and individual units comprising the building in which [Ms. Orange] resided" which gave him "access to the building at all hours." *Id.* at ¶ 7.

Defendant Liberty Services, Ltd. ("Liberty") allegedly performed the background check on Lawlor prior to his employment with the Berkshire Defendants. *Id.* at ¶¶ 26-27. In her Amended Complaint, Plaintiff alleges that Liberty was "in the business of providing background screening information of employees or prospective employees for employers or potential employers" at the time of the incident. *Id.* at ¶ 6. Plaintiff alleges that Liberty negligently performed its background check as it concluded and reported that Lawlor had no criminal background when, in fact, he "had an extensive criminal record including, but not limited to, felony convictions for the abduction/kidnapping of a woman, as well as burglary and unlawful entry of her home, for which he served six years in prison." *Id.* at ¶ 8.

In her Amended Complaint, Plaintiff alleges the following causes of action: (I) Wrongful Death by Intentional Acts (against Lawlor and the Berkshire Defendants); (II) Wrongful Death by Negligence (Negligent Hiring) (against the Berkshire Defendants and Liberty); and (III) Wrongful Death by Negligence (Negligent Retention) (against the Berkshire Defendants).

Liberty demurs as to Count II. Liberty argues that Plaintiff has not alleged and cannot allege a common law duty that Liberty owed Ms. Orange which "arose separate and apart" from Liberty's contractual relationship with the Berkshire Defendants and could give rise to a tort action. *See Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d 494 (1999) ("for [the plaintiff] to maintain a negligence claim against [the defendant], she must identify a common law duty owed by [the defendant] to her, which arose

separate and apart from any duty imposed by [the defendant's] contract. . . ."). Plaintiff contends that she has set forth a proper basis for Liberty's liability based on its negligence, namely, that Liberty undertook a duty to perform Lawlor's criminal background check and that, having undertaken that contractual duty, Liberty had a corresponding duty to use reasonable care in performing said investigation.

## II. *Analysis*

### A. *Legal Standard*

"[A] demurrer tests only the sufficiency of factual allegations made in a pleading to determine whether the pleading states a cause of action." *Barber v. VistaRMS, Inc.*, 272 Va. 319, 327, 634 S.E.2d 706 (2006) (citing *Fun v. Virginia Military Institute*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993)). "[A] demurrer admits the truth of all material facts properly pleaded. Under this principle, 'the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged'." *Lentz v. Morris*, 236 Va. 78, 80, 372 S.E.2d 608 (1988) (quoting *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988)). "If, by proper amendment, the plaintiff can state a case upon the facts entitling her to maintain an action at law, the opportunity to make such amendment should be afforded." *Strader v. Metropolitan Life Ins. Co.*, 128 Va. 238, 246, 105 S.E. 74 (1920).

A "plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132, 523 S.E.2d 826 (2000); *see also Chesapeake & Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751 (1988). "[I]n certain circumstances the actions of the party breaching the contract can show 'both a breach of the contract terms and a tortious breach of duty'. . . . But the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144 (1991).

### B. *Findings*

As the Court indicated during the July 29 hearing, the Demurrer must be sustained as to the "negligent hiring" cause of action against Liberty as hiring is an essential element and there has been no allegation that Liberty actually placed Lawlor in his position at the Prestwick Apartments. *See, e.g., J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 211, 372 S.E.2d 391 (1988) (in an action for negligent hire, "the employer is principally liable for negligently placing an unfit person in an employment situation

involving an unreasonable risk of harm to others"); *Southeast Apts. Mgmt., Inc. v. Jackman*, 257 Va. 256, 260, 513 S.E.2d 395 (1999) (the cause of action for negligent hiring "is based on the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others"); *Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 391 S.E.2d 322 (1990) (affirming trial court's judgment in favor of the national Boy Scouts of America for negligent hiring or retention of a scout leader as it did not select that leader).

Therefore, the issue in this case is whether the Demurrer should be sustained with or without prejudice, and the Court must decide whether Plaintiff should be granted leave to amend this cause of action to allege another negligence claim against Liberty. The resolution of this issue rests on whether an injured third party might have a cause of action sounding in tort against a party who negligently performed a contractual duty. In paragraphs 26, 27, and 29 of the Amended Complaint, Plaintiff alleges the following:

> Prestwick and/or Berkshire engaged Defendant Liberty to do a pre-employment background check on Lawlor. Defendant Liberty knew or should have known that the purpose of providing background checks as to prior criminal history and drug use on employees of apartment complexes who would have access to tenants' apartments is to identify employees with propensities toward violence and who might be dangerous to others, especially tenants. Accordingly, Liberty owed the Decedent a duty to exercise reasonable care in performing its background check of Lawlor. . . . Liberty negligently failed to properly check the background of Lawlor and negligently reported that Lawlor had not criminal history or drug history. Both were incorrect. Information was accessible and available to show that Lawlor had a criminal history and a substance abuse history. . . . The Defendants were on notice that Lawlor would have access to tenants' apartments and that it was foreseeable, in the context of his criminal background, that he posed a danger to the lives and security of the tenants in the Decedent's building.

The Court finds that the factual circumstances alleged in the Amended Complaint could give rise to a claim for negligence under Virginia law and, therefore, sustains the Demurrer without prejudice.

Liberty's brief focuses, primarily, on whether a "special relationship" existed between Liberty and Ms. Orange which could impose a duty of care

on Liberty. Traditional examples of "special relationships" that give rise to duties of care as a matter of law include "common carrier and passenger, business proprietor and invitee, innkeeper and guest, and employer and employee." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 108, 540 S.E.2d 134, 140 (2001). The Supreme Court of Virginia has also imposed liability pursuant to a *de facto* special relationship but has cautioned that it has "rarely found the circumstances of the cases under review to warrant the application of [the special relationship] exceptions." *Id.* at 106; *see also Bosworth v. Vornado Realty, L.P.*, 2010 Va. Cir. LEXIS 206, *4-5 (2010) (discussing *Burdette v. Marks*, 244 Va. 309, 312-13, 421 S.E.2d 419 (1992) (duty existed where an on-duty and uniformed deputy sheriff witnessed two attacks and did nothing to assist), and *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 134, 523 S.E.2d 826 (2000) (facility had a duty to protect one patient from the sexual assault of another patient)). While the Supreme Court of Virginia has recognized that other special relationships may exist, any such relationship must have the "essential characteristic . . . that it provides a right of protection to a plaintiff by a defendant from the criminal acts of third persons that can be reasonably foreseen or anticipated." *Holles*, 257 Va. at 136.

In *Holles v. Sunrise Terrace*, the Supreme Court of Virginia addressed a case in which the defendant contracted with Fairfax County to "ensure the physical security of the residents" amongst other duties. 257 Va. at 133-34. The decedent allowed a third party to enter her apartment and was subsequently raped and murdered. *Id.* The Supreme Court emphasized that for the decedent "to maintain a negligence claim against [the defendant], she must identify a common law duty owed by [the defendant] to her, which arose separate and apart from any duty imposed by [defendant's] contract with Fairfax County." *Id.* at 136. Moreover, "[b]efore any duty of care can arise to control the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person." *Id.* The Supreme Court held that no such duty existed in that case. *Id.* at 137. Liberty argues that *Holles* is directly on point and the same conclusion should be drawn here.

The Court notes that the Supreme Court of Virginia has recognized that liability for negligence may be based on assumption of duty even where no special relationship exists. *See, e.g., Kellermann v. McDonough*, 278 Va. 478, 489, 684 S.E.2d 786, 791 (2009) (finding "no reason to expand our jurisprudence regarding special relationships to include an adult who agrees to supervise and provide care to a minor" but holding that the "duties that do exist in this case are a general duty of ordinary care and an assumed duty.")

However, in this case, Plaintiff argues that her claims are not dependent on the existence of a special relationship. (Plf.'s Brief in Opp., 5.) Plaintiff

emphasizes that she has not alleged that Liberty owed Ms. Orange any duty to control or oversee Lawlor or to take affirmative steps to protect her from or warn her of the risk Lawlor posed. *Id.* at 3. Rather, Plaintiff argues that, once Liberty "undertook to provide a security background screening on Lawlor," it "owed those tenants a duty to use reasonable care in preparing the report so as to identify prospective employees who may present a danger to those tenants. . . ." For these reasons, the Court does not reach the issue of whether Plaintiff could amend her complaint to include duty based on a special relationship as any future negligence claim would purportedly be based on assumption of duty.

Section 323 of the Restatement (Second) of Torts provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such harm or (b) the harm is suffered because of the other's reliance upon the undertaking.

*See also Didato v. Strehler*, 262 Va. 617, 629, 554 S.E.2d 42 (2001) (defendant pediatricians "assumed the duty to convey to the plaintiffs the correct results of their daughter's test, which indicated that she carried the sickle cell trait"); *Kellermann v. McDonough*, 278 Va. 478, 488, 684 S.E.2d 786, 790-91 (holding that the defendant voluntarily assumed a duty to the decedent by agreeing not to permit her to be in a car with any young, male drivers and promising the decedent's parents that she would be taken care of). Similarly, section 115 of the Second Edition of *American Jurisprudence* states that:

> those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a "social" duty imposed by the law to act without negligence, and this social duty extends to persons who, although strangers to the contract, are within the foreseeable orbit of risk of harm. . . . Where one undertakes by contract to perform a certain service and is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and injury occurs to a blameless person, the injured person has a right of action directly against the offending contractor which is not based on any contractual obligation, but rather on the failure of such contractor to exercise due care in the performance of his or her assumed obligation.

57A Am. Jur. 2d, *Negligence*, § 115.

Virginia courts have recognized an independent duty sounding in tort where a party's negligent performance under a contract caused physical harm or death to a third party. For example, in the case of *Boland v. Rivanna Partners*, 69 Va. Cir. 308 (Charlottesville 2005), the plaintiff customer slipped and fell in the parking area of a shopping plaza due to the alleged negligence of the independent contractor who entered into an agreement with the owner and operator of the plaza to plow snow and ice from that same area. The Circuit Court held that the independent contractor "retained an independent duty to use reasonable care because the act of clearing the parking lot was not just for the benefit of [the owner] but also for the benefit of Plaintiff and others like her. It was clearly foreseeable that people other than [the owner] would be affected by the [independent contractor's] actions." *Id.* at 311 (quoting Justice Cardozo's opinion in *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922) ("[i]t is ancient learning that one who assumes to act, even though gratuitously may thereby become subject to the duty of acting carefully, if he acts at all.")) The Circuit Court found that this duty was "separate from any contractual duties due to the owner of the property." *Id.*

Similarly, in *Gonella v. Lumbermens Mutual Casualty Co.*, 64 Va. Cir. 229 (Fairfax 2004), the plaintiffs brought a negligence action against a roofing company who negligently performed repairs on their home resulting in a persistent mold problem. The Circuit Court determined that, when the company performed the repair work, it had a duty to "perform such work without creating an unreasonably dangerous condition on Plaintiffs' property. . . . This duty exists apart from expectations associated with the Plaintiffs' contract with [the company]." *Id.* at 235. The Circuit Court reasoned that "although this court fully agrees with the rationale underlying the Supreme Court of Virginia's decisions holding that breach of contract cases should not inevitably lead to litigation also sounding in tort, the court declines to extend this rationale to preclude a personal injury claim by someone claiming serious injury arising from a contracting party's creation of an unreasonably dangerous condition." *Id.* Notably, the *Gonella* case recognizes an independent duty to perform a contractual duty even where the parties are in privity of contract. *Cf.* Va. Code Ann. § 8.01-223 ("where recovery of damages for injury to person, including death, or to property resulting from negligence is sought, lack of privity between the parties shall be no defense.")

Other jurisdictions have also held that a party to a contract assumed a duty to perform their work with due care and could be liable to a third party who was injured by negligent performance that resulted in a hazard. For example, in *Vick v. H.S.I. Management, Inc.*, 507 So. 2d 433 (Ala. 1987), the plaintiff brought a personal injury action against the owners of the townhouse community where she lived as well as the company

who was under contract with the owners to provide outdoor lighting on the property when plaintiff fell down some poorly lit steps. The Supreme Court of Alabama held that it was "foreseeable that, without the outdoor lights, a third party, such as [plaintiff] could be injured while attempting to use the common grounds on the premises." *Id.* at 436. Therefore, the trial court erred in granting the company summary judgment as the company undertook a contract "for the benefit of the tenants" and assumed a duty to those tenants. *Id.* at 435. Another example is the case of *Wise v. Complete Staffing Services, Inc.,* 56 S.W.3d 900, 903-04 (Tex. App. 2001), in which the Court of Appeals of Texas determined that summary judgment in favor of the company who undertook to perform a criminal background check of a temporary worker who injured the plaintiff was not appropriate as the investigation was limited to a single county and a genuine issue of material fact existed as to whether that check was inadequate and negligently performed.

In summary, the Court finds that the *Boland* and *Gonella* cases as well as case law from other jurisdictions demonstrate that Plaintiff should be given leave to amend her pleadings to allege a cause of action for negligence against Liberty based on its assumption of duty even though it was contractually bound only to the Berkshire Defendants. The Court makes no ruling as to whether an amended negligence claim would survive a subsequent demurrer.

Accordingly, for the reasons stated above, Defendant Liberty Screening Services, Ltd.'s Demurrer is sustained without prejudice, and Plaintiff has twenty-one days to file an amended complaint. Any subsequent demurrers must also be heard by this Court.

December 14, 2011

On November 4, 2011, this court heard oral argument on the Demurrer of Defendant Liberty Screening Services ("Liberty") to Count IV of Plaintiff Marilyn Orange's ("Plaintiff") Second Amended Complaint. At the conclusion of the hearing, the court informed the parties that it would take the matter under advisement. After reviewing the parties' briefs and in light of the oral arguments made, the Court is now prepared to rule.

It should be noted that a related issue was before the court previously on Liberty's Demurrer to Plaintiff's First Amended Complaint. On August 10, 2011, this court issued a letter opinion sustaining Liberty's Demurrer to a count alleging negligent hiring. *See above.* The more difficult question presented was whether Liberty's Demurrer should be sustained with or without prejudice, which turned on whether the plaintiff might properly be able to plead a negligence claim based on the assertion that an independent duty sounding in tort exists where a party's negligent performance under a contract causes physical harm or death to a third party. The court found,

in sum, that sufficient precedent existed to at least permit the plaintiff to plead an amended claim but noted that the court expressed no position as to whether the amended claim would survive a subsequent demurrer. Plaintiff filed her Second Amended Complaint on August 31, 2011, and Liberty subsequently demurred. Following another round of briefing and oral argument, the court now concludes that Liberty's Demurrer to Count IV of the Second Amended Complaint must be sustained with prejudice.

## I. *Background*

This case arises out of the September 2008 rape and murder of Genevieve Orange ("Ms. Orange"). Plaintiff brings the instant wrongful death action as the administratrix of her daughter's estate. On or about September 25, 2008, Ms. Orange was brutally murdered in her rental unit at the Prestwick Apartments, allegedly owned by Defendant BVF-II Prestwick, L.L.C., and managed and/or operated by Berkshire Property Advisors, L.L.C. (collectively, the "Berkshire Defendants"). (Complaint ¶¶ 3-5.) On February 22, 2011, Defendant Mark Lawlor was found guilty of the rape and capital murder of Ms. Orange and was later sentenced to death. At the time of the incident, Lawlor was an employee of the Berkshire Defendants who "performed services relating to maintenance and upkeep of the building and individual units comprising the building in which the decedent resided" which gave him "access to the tenants' apartments at all hours." *Id.* at ¶ 7.

Prior to hiring Lawlor, the Berkshire Defendants engaged Liberty to perform "a pre-employment background check." *Id.* at ¶ 36. The Second Amended Complaint alleges that Liberty "negligently failed to properly check the background of Defendant Lawlor, and negligently reported that Defendant Lawlor had no criminal history or drug history," and "both [facts] were incorrect." *Id.* at ¶ 38. Plaintiff submits that Liberty "had a duty to the tenants and their invitees to identify potential employees with a history and/or propensities towards violence," and Liberty's breach of that duty resulted in Ms. Orange's death. *Id.* at ¶¶ 39-40.

Paragraph 39 of the Second Amended Complaint also states the following: "[Liberty] knew or should have known of Defendant Lawlor's criminal records for kidnapping, burglary and unlawful entry and *to permit him to have unfettered access to tenants' apartments breached that duty.*" (Emphasis added.) Even if the court accepted Plaintiff's theory of the case, the court would still need to sustain the Demurrer (at least as to the italicized allegation) in light of the fact that Liberty neither hired Lawlor nor determined the terms of his employment.

Liberty demurs to Count IV: Wrongful Death by Negligence. Liberty argues that Count IV fails as a matter of law because it did not owe a duty of care to Ms. Orange under Virginia law. Liberty cites several cases that

support the proposition that, in Virginia, there is no duty to warn against or protect another person from the criminal acts of a third person absent a special relationship. Liberty maintains that the special relationship standard is the only source of duty that the Virginia Supreme Court has relied on in such cases and to create a new "assumption of duty" exception would be inconsistent with Virginia law.

By contrast, Plaintiff contends that, even in the absence of a special relationship, the Supreme Court has held that a defendant may be found liable for the wrongful death of a person caused by the criminal acts of a third-party where the defendant voluntarily undertook a common-law duty and failed to exercise reasonable care. *See Kellermann v. McDonough*, 278 Va. 478, 684 S.E.2d 786 (2009). Plaintiff argues that Liberty voluntarily assumed the duty to identify potentially violent employees and then failed to use reasonable care in the performance of that duty, resulting in the tragic death of Ms. Orange.

## II. *Analysis*

### A. *Standard of Review*

"[A] demurrer tests only the sufficiency of factual allegations made in a pleading to determine whether the pleading states a cause of action." *Barber v. VistaRMS, Inc.*, 272 Va. 319, 327, 634 S.E.2d 706 (2006) (citing *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993)). "[A] demurrer admits the truth of all material facts properly pleaded. Under this principle, `the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged'." *Lentz v. Morris*, 236 Va. 78, 80, 372 S.E.2d 608 (1988) (quoting *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717 (1988)).

"[A] plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132, 523 S.E.2d 826 (2000); *see also Chesapeake & Potomac Telephone Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751 (1988). "[I]n certain circumstances, the actions of the party breaching the contract can show `both a breach of the contract terms and a tortious breach of duty'. . . . But the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144 (1991).

### B. *Findings*

The issue in this case is whether an independent duty sounding in tort exists where a party's negligent performance under a contract causes physical harm or death to a third party. There is no Virginia case law precisely on point, but there is ample precedent holding that there is no common-law duty to protect a person from the violent acts of a third party absent a special relationship. *See Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d 494 (1999); *see also Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 540 S.E.2d 134 (2001).

In *Holles*, the Supreme Court of Virginia addressed a case in which the defendant contracted with Fairfax County to "ensure the physical security of the residents" amongst other duties. 257 Va. at 133-34. The decedent allowed a third party to enter her apartment and was subsequently raped and murdered. *Id.* The Supreme Court emphasized that, in order for the decedent "to maintain a negligence claim against [the defendant], she must identify a common law duty owed by [the defendant] to her, which arose separate and apart from any duty imposed by [defendant's] contract with Fairfax County." *Id.* at 136. Moreover, "[b]efore any duty of care can arise to control the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person." *Id.* The Supreme Court held that no such duty existed in *Holles* "because there was no right of protection inherent in their relationship separate and apart from any duties imposed by [defendant's] contract with the County." *Id.* at 137. Liberty argues that the Supreme Court's decision in *Holles* is controlling and that the same conclusion should be drawn in the instant case.

In this case, however, Plaintiff has not alleged a special relationship between Ms. Orange and Liberty. Instead, Plaintiff argues that Liberty assumed a duty that it owed to the tenants to "identify potential employees with a history and/or propensities towards violence and whom it knew to be dangerous to others." (Complaint ¶ 39.) Plaintiff grounds its argument in Section 323 of the Restatement (Second) of Torts, which states, in pertinent part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*See also Didato v. Strehler*, 262 Va. 617, 629, 554 S.E.2d 42 (2001).

A similar argument was presented in *Bosworth v. Vornado Realty, L.P.*, 2010 Va. Cir. LEXIS 206, but Judge Maxfield of this court declined to extend

the common law principles embodied in Section 323 of the Restatement in that case. In *Bosworth*, the defendant-security company was under contract to provide security services at a shopping mall where the decedent was abducted and ultimately killed. *Id.* at *2. The plaintiff argued that, in the absence of a special relationship, the defendant voluntarily assumed a duty to protect the decedent from violent crime by agreeing to provide security services. *Id.* at *16-17.

Judge Maxfield rejected plaintiff's argument and found that the allegations in the complaint did not fit within the narrow set of cases in which the Virginia Supreme Court had relied on the Section 323 rationale, namely "wrongful death, wrongful birth, and one specific type of negligent driving case." *Id.* at *18. In sustaining the defendant's demurrer, Judge Maxfield wrote the following:

> Special relationship jurisprudence addresses at length whether a duty has been assumed voluntarily or by characteristics inherent to the relationship. A new "assumption of duty" exception grounded in Section 323 of the Restatement (Second) of Torts would conflict with and, thereby, confuse this special relationship precedent. Accordingly, this court declines to create a new "assumption of duty" exception to the general rule that there is no duty to protect another person from a third person's criminal acts.

*Id.* at *21. Moreover, Judge Maxfield noted that, "in each of the `assumption of duty' cases, the [Supreme] Court explicitly or implicitly required the defendant to `personally engage in some affirmative act amounting to a rendering of services to another'," and the plaintiff in *Bosworth* failed to allege such an act. *Id.* at *19.

In the instant case, Plaintiff relies on *Kellermann*, a case in which the Supreme Court referenced Section 323, to argue that a defendant may be held liable for the wrongful death of another person caused by the criminal acts of a third-party where the defendant voluntarily assumed a common-law duty. In *Kellermann*, the plaintiff instructed the defendant-mother that the decedent, plaintiff's fourteen-year-old daughter, "was not to be in a car with any young, male drivers." *Kellermann*, 278 Va. at 490. The defendant-mother then expressly agreed to plaintiff's request and stated the following: "don't worry, I promise we'll take good care of her." *Id.* The defendant-mother then disregarded plaintiff's request and "purposefully instructed or otherwise permitted [the decedent] to go home with [a young, male driver]." *Id.* at 485.

The Supreme Court held that plaintiff had a cognizable tort claim based on the theory that the defendant-mother had undertaken a duty to supervise and care for the decedent. *Id.* at 489. The Court also held that the same

theory failed as to the defendant-father because he "was not present when [the defendant-mother] assumed the duty to exercise reasonable care to prevent [the decedent] from riding in cars driven by inexperienced drivers." *Id.* at 490.

The facts of *Kellermann* are distinguishable from the instant case insofar as the defendant-mother in *Kellermann* personally agreed with the plaintiff to undertake a duty on behalf of the decedent. By contrast, Liberty never agreed to assume a duty on behalf of Ms. Orange. In fact, there is no evidence that Ms. Orange was even aware of Liberty's existence. Unlike in *Kellermann*, there is no allegation of an agreement between Plaintiff and Liberty in this case.

Instead, Liberty had a contract with Berkshire, and any duty alleged in the Second Amended Complaint arises solely out of that contract. "To establish a cause of action for negligence, the duty to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract." *Holles*, 257 Va. at 136. Therefore, it is this court's opinion that the Second Amended Complaint fails to plead sufficient facts for the court to conclude that Liberty assumed a common-law duty independent of any contractual duty it owed to the Berkshire Defendants.

Accordingly, for the reasons stated above, Defendant Liberty Screening Services' Demurrer is sustained with prejudice.